LittletoN, Judge,
delivered the opinion of the court:
Plaintiff sues to recover a minimum of $472,490, together with interest, being one-fourth of the value of 1,511,968 acres of land'lying between the North Fork and the South Fork of the Eed River and bounded on the west by the one hundredth meridian of west longitude, which tract of land has been known and designated as “ Greer County,” in the State of Texas.
Plaintiff asserts that these lands • were conveyed to the Choctaws and Chickaaaws with other lands by the United States under certain treaties hereinafter mentioned and that the Choctaws and the Chickasaws have never been divested of their ownership and title in and to these lands, and that they are therefore the owners of legal title thereto in proportion of three-fourths to the Choctaws and one-fourth to the plaintiff ; that the United States ignored the ownership and title of- the Choctaw and Chickasaw Nations and in violation of their rights sold or disposed of such lands some time after March 16, 1896, and that the United States is liable to plaintiff for one-fourth of the amount for which these lands were sold if in excess of $1.25 an acre, and that if sold or disposed of for less than $1.25 an acre it is liable to plaintiff for one-fourth of $1.25 an acre for the entire acreage of 1,511,968.
The petition was filed August 5, 1929, under the act of Congress approved June 7, 1924, 43 Stat. 537, and the act of February 19,1929, 45 Stat. 1229, conferring jurisdiction upon this court to “ hear, examine, and adjudicate and render judgment in any and all legal and equitable claims arising under or growing out of any treaty or agreement between the United States and the Choctaw and Chickasaw Indian Nations or Tribes, or either of them, or arising under or growing out of any act of Congress in relation to Indian affairs which said Choctaw and Chickasaw Nations or Tribes *428 may have against the United States, which claims have not heretofore been determined and adjudicated on their merits by the Court of Claims or the Supreme Court of the United States.”
The lands constituting the subject matter of this suit comprise 1,511,968 acres, more or less, lying between the North Fork and the South Fork of the Red River and bounded on the west by the one hundredth meridian of west longitude, and known and designated for years as “ Greer County ” in the State of Texas. This territory, together with other lands, was ceded by Spain to the United States by treaty of February 22, 1819, from which time continuously until the Government’s title thereto was adjudicated in the United States v. State of Texas, 162 U. S. 1, the United States asserted and laid claim to said disputed territory known as Greer County. The lands above-mentioned, with other lands, were conveyed by the United States to the Choctaw and Chickasaw Nations under treaties or agreements of 1820, 7 Stat. 210; 1830, 7 Stat. 333; 1837, 11 Stat. 573; 1855, 11 Stat. 611; and 1866, 14 Stat. 769.
Article IX of the treaty of 1855 between the United States and the Choctaw and Chickasaw Nations provided: “ * * * the Choctaws and Chickasaws do hereby lease to the United States all that portion of their common territory west of the ninety-eighth degree of west longitude, for the permanent settlement of the Wichita and such other tribes or bands of Indians as the Government may wish to locate therein * * In Article III of the treaty of 1866 it was provided that “ The Choctaws and Chickasaws * * * hereby cede to the United States the territory west of the ninety-eighth degree west longitude, known as the leased district, * * This article further provided a consideration of $300,000 for the ceded territory. The 1,511,968 acres constituting the subject matter of this suit, and known as Greer County, were west of the ninety-eighth degree of west longitude.
Plaintiff alleges and contends that the land in question was not leased to the United States under the treaty of 1855 and was not ceded to the United States under the treaty of 1866; that the ownership and title thereto were a subject of *429 dispute and controversy from 1819 until March 16, 1896, when the Supreme Court in United States v. State of Texas, supra, decided that the land had been acquired by the United States under its treaty of 1819 with Spain. It is further alleged and contended that the decision of the Supreme Court inured to the benefit of the Choctaw and Chickasaw Nations, as the land known as Greer County had been acquired by them from the United States under the treaty of 1820 and later treaties above mentioned; that although the land in question was west of the ninety-eighth degree of west-longitude, it was not and could not have been within the territory referred to in the treaty of 1866 as the territory “ known as the leased district,” because the ownership and title thereof were in dispute and the United States was not in possession of the land; and, further, that only that territory upon which the character of the leased land was known to have been impressed by the removal and settlement thereon of tribal bands of Indians prior to 1866 was ceded by the Choctaw and Chickasaw Nations under the provisions of the treaty of 1866. It is therefore contended by plaintiff that it has never been divested of its title and ownership in and to said land acquired from the United States under the treaty of 1820 and subsequent treaties, and that after the decision in the United States v. State of Texas, supra, in March, 1896, the land was sold and otherwise disposed of as public lands by the United States in violation of the rights of the Choctaw and Chickasaw Nations, and that it is entitled to recover from the defendant approximately one-fourth of the value of the land at the time of sale thereof.
The defendant demurs to the petition on the ground that it does not set forth facts sufficient to constitute a cause of action, and contends that under the facts alleged and the treaties to which reference is made, there is no basis in fact or law for a judgment against the United States.
The land in controversy herein, known as “ Greer County,” was, together with other territory, ceded to the United States by Spain under the treaty of February 22, 1819, between the United States and Spain.
Article III of this treaty shows the Bed River at certain indicated points to be the southern boundary of the United *430 States, and provides in part that “ The boundary line between the two countries, west of the Mississippi, shall begin on the Gulf of Mexico, at the mouth of the River Sabine, in the sea, continuing north, along the western bank of that river to the 32d degree of latitude; thence, by a line due north, to the degree of latitude where it strikes the Rio Roxo, of Natchitoches, or Red River; then following the course of the Rio Roxo, westward, to the degree of longitude 100 west from London and 23 from Washington; * *
Due to the fact that it was not until many years after this original cession by Spain that an accurate survey of the ceded country was made, the title to the particular land in controvers}'' in this suit was in dispute until the Supreme Court in United States v. State of Texas, supra, decided that the land known as Greer County was within the boundary of the country acquired by the United States under the treaty of 1819 with Spain. This decision gave the United States title to this disputed area from February 22, 1819, until the latter divested itself of the same.
By article 2 of the treaty of 1820 between the United States and the Choctaw Nation, the former ceded to the latter “ * * * a tract of country west of the Mississippi River, situate between the Arkansas and Red Rivers, and bounded as follows: Beginning on the Arkansas River, where the lower boundary line of the Cherokees strikes the same; thence up the Arkansas to the Canadian Fork, and up the same to its source; thence due south to the Red River ; thence down Red River, three miles below the mouth of Little River, which empties itself into Red River on the north side; thence a direct line to the beginning.” The land involved in this suit was within the area ceded by the United States to the Choctaw Nation under this treaty which defined the Red River as a portion of the southern boundary thereof.
In article 2 of the treaty of September 21, 1830, between the United States and the Choctaw Nation, the former agreed to “ * * * cause to be conveyed to the Choctaw Nation a tract of country west of the Mississippi River, in fee simple to them and their descendants, to inure to them *431 while they shall exist as a nation and live on it, beginning near Fort Smith, where the Arkansas boundary crosses the Arkansas River, running thence to the source of the Cána-dian Fork; if in the limits of the United States, or to those limits; thence due south to Red River, and down Red River to the west boundary of the Territory of' Arkansas; thence north along that line to the beginning. The boundary of the same to be agreeably to the treaty made and concluded at Washington City in the year 1825. The grant to be executed so soon as the present treaty shall be ratified.”
The land lying between the North Fork and the South Fork of Red River and bounded on the west by the one-hundredth meridian of west longitude and “ known as Greer County,” which land constitutes the subject matter of this action, was within the area ceded by the provisions of Article 2 set out, and the Red River thereby became a portion of the boundary of the territory therein described.
The treaty of January TT, 1837, was between the Choctaw Nation and the Chickasaw Nation, and accorded certain privileges to these nations. Among other privileges, the Chickasaws were granted the right to form a district within the limits of the Choctaw country, and in Article 2 thereof it was provided that: “ The Chickasaw district shall be bounded as follows, viz: Beginning on the north bank of Red River, at the mouth of Island Bayou, about eight or ten miles below the mouth of False Wachitta; thence running north along the main channel of said bayou to its source; thence along the dividing ridge between Wachitta and Low Blue Rivers to the road leading from Fort Gibson to Fort Wachitta; thence along said road, to the line dividing Mushallatubbee and Pushmatahaw districts; thence eastwardly along said district line, to the source of Brushy Creek; thence down said creek to where it flows into the Canadian River, ten or twelve miles above the mouth of the south fork of the Canadian; thence west along the main Canadian River, to its source, if in the limits of the United States, or to those limits; and thence due south to Red River, and down Red River to the beginning.” The United States was not a party to this treaty, which was merely an *432 agreement between the Choctaw and Chickasaw Nations in respect to tribal relations.
The treaty of 1855, supra, was a treaty between the United States and the Choctaw and Chickasaw Nations, and was concluded June 22, 1855. It superseded all former treaties between the United States and the Choctaws and all former treaty stipulations between the United States and the Chickasaws, and between the Choctaws and Chickasaws inconsistent therewith. This treaty, in so far as it is pertinent to the question involved in this case, provides as follows:
“ Whereas, the political connection heretofore existing between the Choctaw and the Chickasaw Tribes of Indians, has given rise to unhappy and injurious dissensions and controversies among them, which render necessary a readjustment of their mations to each other and to the United States; and
“Whereas, the United States desires that the Choctaw Indians shall relinquish all claim to any territory west of the one-hundredth degree of west longitude, and also to make provision for the permanent settlement within the Choctaw country of the Wichita and certain other tribes or bands of Indians, for which purpose the Choctaws and Chickasaws are willing to lease, on reasonable terms, to the United States, that portion of their common territory which is west of the ninety-eighth degree of west longitude; and
“ Whereas * * * it is necessary for the simplification and better understanding of the relations between the United States and the Choctaw Indians, that all their subsisting treaty stipulations be embodied in one comprehensive instrument:
“ Now, therefore, the United States of America * * *, the Choctaws, * * * and the Chickasaws, * * * do hereby agree and stipulate as follows, viz:
“Aeticlb 1. The following shall constitute and remain the boundaries of the Choctaw and Chickasaw country, viz: Beginning at a point on the Arkansas River, one hundred paces east of old Fort Smith, where the western boundary line of the State of Arkansas crosses the said river, and running thence due south to Red River, thence up Red River to the point where the meridian of one hundred degrees west longitude crosses the same; thence north along said meridian to the main Canadian River; thence down said river to its junction with the Arkansas River, thence down said river to the place of beginning.
*433 “Ahticle 9. The Choctaw Indians do hereby absolutely and forever quitclaim and relinquish to the United States, all their right, title, and interest in, and to any and all lands, west of the one hundredth degree of west longitude; and the Choctaws and Chickasaws do hereby lease to the United States all that portion of their common territory west of the ninety-eighth degree of west longitude, for the permanent settlement of the Wichita and such other tribes or bands, of Indians as the Government may desire to locate therein
* * *: Provided, however, The territory so léased shall remain open to settlement by Choctaws and Chickasaws as. heretofore.
«i» •{»
“ Article 21. This convention shall supersede and take the place of all former treaties between the United States and the Choctaws, and, also, of all treaty stipulations between the United States and the Chickasaws, and between the Choctaws and Chickasaws, inconsistent with .the agreement, and shall take effect and be obligatory upon the contracting parties, from the date hereof, whenever the same shall be ratified by the respective councils of the Choctaw and Chickasaw Tribes and by the President and Senate-of the United States.”
This treaty was ratified by the general council of the Choctaw and the Chickasaw Tribes November 16 and December 13, 1855, respectively, and by the United States Senate on March 8, 1859. It was proclaimed April 29, 1859.
It should be noted that the lands in controversy in this, suit, known as “ Greer County ” were situate west of the ninety-eighth degree of west longitude and were within the territory leased by the United States under the provisions of article 9 of the treaty of 1855, and that under article 1 of the treaty of 1855 the Red River was defined as a portion of' the southern boundry of the Choctaw and Chickasaw country.
The treaty of 1866, sufra, between the United States and the Choctaw and Chickasaw Nations was concluded April 28, 1866. Under its terms the Choctaws and Chickasaws ceded outright to the United States all of their territory west of the ninety-eighth degree of west longitude, known as the leased district; article 3 thereof providing as follows:
“Article 3. The Choctaws and Chickasaws, in consideration of the sum of three hundred thousand dollars hereby *434 cede to the United States the territory west of the 98° west longitude, known as the leased district, provided that the said sum shall be invested and held by the United States, at an interest not less than five per cent * *
There can be no dispute that the land in controversy in this suit known as Greer County was within the limits of the “ leased district ” described in Article 9 of the treaty of 1855. When the Choctaws and the Chickasaws ceded to the United States under the treaty of 1866 the territory west of the ninety-eighth degree, west longitude, these nations, in our opinion, ceded all of the lands lying between the northern and southern boundaries of. territory west of the ninety-eighth degree which had theretofore been granted to them by the United States. By the treaty of 1819 with Spain, Bed Biver became a part of the southern boundary of the United States. From that date forward the United States claimed title to and ownership of the disputed territory of 1,511,968 acres, more or less, afterwards known as Greer County. Inasmuch as the Bed Biver is specifically named in the treaties with the Choctaws, we think the United States intended that the southern boundry of the Choctaw Nation should be coincident with its own southern boundary, in so far as the cession to that Indian nation was concerned. When therefore, in 1855, the Choctaws and the Chickasaws leased all of their territory west of the ninety-eighth degree they leased all that they had theretofore obtained from the United States, the Bed Biver being named and described in the treaty with Spain and with the Choctaws and the Chickasaws as constituting a portion of the southern boundary of the area described therein. The fact that the interested parties were not certain as to the exact location of the Bed Biver or that there was doubt as to what was meant by the “ Bed Biver,” does not alter the fact that by the treaty of 1855 the Choctaws and the Chickasaws intended to lease all the land theretofore acquired from the United States and that the latter intended to take a lease of all land that it had theretofore ceded to these Indian nations. Inasmuch as the land in controversy in this suit, known as Greer County, was situate within the territory west of the ninety-eighth degree of west longitude, known as the “ leased district,” we think *435 it is clear that it was included in the territory, ceded by the provisions of Article 3 of the treaty of 1866.
Plaintiff further contends that there was included in the land leased under the treaty of 1855 only such territory west of the ninety-eighth degree, west longitude, upon which various tribes and bands of Indians were subsequently located or settled, inasmuch as this territory was leased for the definite and specific purpose of “ * * * the permanent settlement of the Wichita and such other tribes or bands of Indians as the Government may desire to locate therein * * and insists that no portion of the territory.west of the ninety-eighth degree of west longitude became included in the “ leased district ” until some tribe or band of Indians had been located thereon by the Government; and that inasmuch as no Indian tribe or band had been located on the land known as Greer County to the date of ratification of the treaty of 1866, the land in question herein could not have been within the territory known as the leased district. In our opinion it is immaterial whether any-of the purposes for which the land was originally leased were accomplished by the United States. Under the language of the treaty of 1866 the Choctaws and the Chickasaws intended to cede, and did cede, to the United States “ the territory west of the ninety-eighth degree, west longitude,” which territory included the land which theretofore, under the treaty of 1855, had been leased by these Indian nations to the United States for certain specified purposes.
It is finally urged by plaintiff that inasmuch as the State of Texas was claiming title to and ownership of “ Greer County ” when the treaties of 1855 and 1866 were ratified, the land in question Avas “ not and could not have been known as the leased district.” In our opinion the fact that the State of Texas laid claim to the land in question is not important. Under the decision in United States v. State of Texas, supra, title to the property vested in the United States in 1819. Under the provisions of subsequent treaties between the United States and the ChoctaAV and Chickasaw Nations, title to this land became vested in the Choctaw and Chickasaw Nations and remained in them until the final *436 ratification and proclamation of tbe treaty of 1866 in which the Indian nations ceded back to the United States all of their right, title, and interest to the lands in controversy herein.
The demurrer is sustained and the petition is dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.